Brian COLBURN, Plaintiff

v.

PARKER HANNIFIN/NICHOLS
PORTLAND DIVISION,
Defendant

No. CIV. 04–10–P–H.

United States District Court,
D. Maine.

Jan. 25, 2005.

Adrienne S. Hansen, Howard T. Reben, Reben, Benjamin, & March, Portland, ME, for Brian Colburn, Plaintiff.

Peter Bennett, Frederick B. Finberg, Bennett Law Firm, P.A., Portland, ME, for Parker Hannifin Nichols Portland Division, Defendant.

## ORDER AFFIRMING THE RECOMMENDED DECISION OF THE MAGISTRATE JUDGE

HORNBY, District Judge.

This is a lawsuit by a former employee charging that his employer violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601–2654 and its Maine counterpart, 26 M.R.S.A. § 843–848. After oral argument on January 3, 2005, I Adopt the Recommended Decision of the Magis-

trate Judge that the employer be awarded summary judgment. My review is *de novo.* I make the following observations about issues that arose during the briefing and arguing of objections to the Recommended Decision.

The Magistrate Judge properly concluded that the employee's affidavit directly contradicted portions of the employee's earlier deposition, that the employee did not file this affidavit until after the employer moved for summary judgment, that his current lawyers had represented the employee at the deposition, and that the employee failed to explain the contradiction.[1] The Magistrate Judge correctly struck the contradictory portions of the affidavit in accordance with *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1st Cir.1994), and *Torres v. E.I. Dupont De Nemours & Co.,* 219 F.3d 13, 20–21 (1st Cir.2000).

I disagree with the Magistrate Judge's conclusion that a deposition of the employee's doctor could not create a genuine issue of material fact (beneficial to the employee) where the doctor's testimony contradicts the employee's deposition testimony. The Magistrate Judge reasoned that the doctor "merely states what the [employee] reported to him ... it is not an independent source authority [sic] for the factual statement." Recommended Decision at 4, n. 1. But the doctor's deposition concerned statements made by the employee well before the employee's deposition.[2] Thus, statements made to the doctor that contradicted the employee's deposition testimony would not be disqualified by *Colantuoni.* Moreover, such

1. Apparently the first explanation of this inconsistency occurred at the January 3 oral argument on the objections to the Recommended Decision.

2. Dr. Sullivan testified at his deposition that on February 13, 2002, the employee had re-

ported a visual aura that lasted for a few hours before the headache developed. The employee stated several times in his deposition that he did not experience warning signs before the onset of a migraine headache, including the flickering lights or black spots characterized as "aura."

statements would not be inadmissible hearsay. *See* Fed.R.Evid. 803(4). They could therefore create a factual issue. This error is of no consequence to the outcome of this case, however, because the cited portions of the doctor's deposition reveal nothing that counters the employee's deposition statements that he was unable to return to work until April 15, 2003. Therefore, I agree with the Magistrate Judge that, according to the summary judgment record, "[t]he [employee] was unable to return to work due to his medical condition from the date of his termination on January 31, 2002 until April 15, 2003." Recommended Decision at 9. This dooms the employee's claim that his employer interfered with his FMLA rights.[3] *See, e.g., Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 161–62 (2d Cir.1999); *Wilcock v. Nat'l Distribs., Inc.,* No. 00–298–P–H, 2001 WL 877547, at *4 (D.Me. Aug.2, 2001).

■ The employee argues that even if his interference claim fails (based on his inability to return to work), his FMLA retaliation claim still stands, because at the time his employer terminated him, it believed he was (or would be) able to return to work. But the employee's inability to return to work following the expiration of his FMLA leave extinguishes his retaliation claim under the FMLA.[4] Damages are limited to lost or denied income (here, none since he could not work) and costs incurred (none) as a result of an FMLA violation; no nominal or consequential damages are available. *Walker v. United Parcel Serv., Inc.,* 240 F.3d 1268–1277–78 (10th Cir.2001); *Montgomery v. Maryland,* 72 Fed. Appx. 17, 19 (4th Cir.2003); *Nero v. Indus. Molding Corp.,* 167 F.3d 921, 930 (5th Cir.1999).[5]

The defendant's motion for summary judgment is GRANTED.

**SO ORDERED.**

### *RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT*

DAVID M. COHEN, United States Magistrate Judge.

The defendant, Nichols Portland, a division of Parker Hannifin Corporation, moves for summary judgment in this action based on the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 17). I recommend that the court grant the motion.

---

3. Although the defendant has filed no objection to the Recommended Decision, it argues in a footnote that the plaintiff forfeited his interference claim by failing to address the claim in his opposition to summary judgment. I conclude that the claim was not forfeited: although the plaintiff's memorandum responding to the defendant's motion for summary judgment focused on the plaintiff's retaliation claim, it did include a reference to and short discussion of the interference claim. *See* Pl.'s Opp'n Mot. Summ. J. at 2–3, 19. In any event, the question is moot in light of my ruling that the defendant obtains summary judgment on the interference claim because the plaintiff could not return to work.

4. The Department of Labor regulations say that an FMLA claim fails if an employee can-

not return to work for medical reasons, 29 C.F.R. §§ 825.214(b), –216(d), and the plaintiff has not pointed to any contrary authority.

5. I recognize that in employment discrimination law generally, a defense that emerges after termination (here, the deposition testimony that the employee could not return to work) may limit damages, but does not eliminate liability altogether. *See McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 362–63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Under the factual circumstances on this summary judgment record, however, and given FMLA law, no damages (not even nominal) are available to the plaintiff.

## I. Summary Judgment Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)). The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

## II. Factual Background

### A. *Colantuoni* Issue

In accordance with this court's Local Rule 56, the parties have submitted statements of material facts in connection with the motion for summary judgment, The defendant objects to several of the plaintiff's responses to its statement of material facts and to several paragraphs of the separate statement of material facts submitted by the plaintiff on the ground that they are based on an affidavit submitted by the plaintiff "that clearly conflicts with his earlier testimony." Defendant's Reply Brief in Support of Motion for Summary Judgment ("Reply") (Docket No. 28) at 2; Defendant's Reply to Plaintiff's Statement of Material Facts ("Defendant's Responsive SMF") (Docket No. 29) ¶¶ 23–25, 27, 29, 31, 50, 72, 80, 98–100; Plaintiff's Reply to Defendant's Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 26) ¶¶ 14, 16, 32, 38, 51.

The First Circuit has made clear that

[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.

*Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994). In *Colantuoni*, the previous testimony at issue was given in a deposition. *Id.* at 5. The *Colantuoni* rule carries particular weight where the affidavit at issue is submitted only after the opposing party has submitted a motion for summary judgment and where the affiant was represented at his deposition by the same attorney who now represents him, *Sailor, Inc. F/V v. City of Rockland*, 324 F.Supp.2d 197, 202 (D.Me.2004), as is the case here. To the extent that the plaintiff's affidavit does

create a conflict with his deposition testimony, the affidavit makes no attempt to explain why the testimony has changed. Affidavit of Plaintiff Brian Colburn ("Plaintiff's Aff.") (Exh. A to Plaintiff's Responsive SMF).

Paragraphs 20–23, 25–26, 28 and 72–73 of the plaintiff's affidavit are challenged by the defendant. Paragraph 20 states: "During the period of time between October 2, 2001 and at least until January 31, 2002, my migraines were all different in intensity, duration, and symptoms." *Id.* ¶ 20. The defendant contends that this statement contradicts the plaintiff's deposition testimony. Defendant's Responsive SMF ¶ 23. However, the portions of the plaintiff's deposition testimony cited by the defendant in support of its position, Defendant's Statement of Material Facts ("Defendant's SMF") (Docket No. 18) ¶ 40, are not contradicted by paragraph 20 of the affidavit. The cited deposition testimony simply establishes that the plaintiff did not experience symptoms preceding or warning of a migraine; that is not necessarily inconsistent with the statement that each migraine differed in intensity, duration and symptoms.

Paragraph 21 of the affidavit states: "I could usually tell when a migraine was coming on, as I would feel tired, weak, queasy, or dizzy, and sometimes I would have visual warning for a few hours prior to experiencing severe headache pain." Plaintiff's Aff. ¶ 21. The defendant challenges this paragraph on the basis of the same portions of the plaintiff's deposition testimony that it cited in support of its challenge to paragraph 20. Defendant's

Responsive SMF ¶ 24. In this case, the deposition testimony does contradict the statement in the affidavit. The deposition testimony was as follows:

Q. Could you sense a migraine coming on before it came on?

A. No, just right out of the blue.

Q. And the pain would be severe without notice?

A. Correct.

Q. It wouldn't creep up on you?

A. No.

\* \* \* \* \* \*

Q. And when the migraines came on you experienced those severe symptoms immediately?

A. Yes.

\* \* \* \* \* \*

Q. And did those—did that symptom [some kind of lights] precede the severe pain or come at the same time?

A. Same time or after.

Q. You didn't experience the flickering lights or black spots for a lengthy period of time before that severe pain set in?

A. No. No.

Deposition of Brian Colburn ("Plaintiff's Dep.") (Exh. B to Defendant's SMF) at 59–60, 69, 78. This unexplained contradiction requires that paragraph 21 of the plaintiff's affidavit and paragraph 24 of the plaintiff's statement of material facts, which repeats the assertion, be stricken.[1]

Paragraph 23 of the plaintiff's affidavit states: "The most severe phase of a migraine, the acute headache pain, often

---

1. Paragraph 24 of the plaintiff's statement of material facts also cites the deposition of Richard Sullivan, M.D. Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's SMF") (included in Plaintiff's Responsive SMF beginning at 13) ¶ 24. Pages of the transcript of what is apparently a deposition of Richard L. Sullivan, M.D. are included in Exhibit E to the plaintiff's statement of material facts. Dr. Sullivan's cited response merely states what the plaintiff reported to him, Exh. E to Plaintiff's Responsive SMF at 16; it is not an independent source authority for the factual statement in paragraph 24 of the plaintiff's statement of material facts.

came on suddenly, but the onset and aftermath would be more predictable." Plaintiff's Aff. ¶ 23. The defendant again challenges this paragraph based on the cited deposition testimony. Defendant's Responsive SMF ¶ 27. With respect to that portion of the paragraph from the affidavit that deals with the onset of a migraine, the objection is well-taken, and that portion of paragraph 23 of the affidavit and paragraph 27 of the plaintiff's statement of material facts is stricken.

Paragraph 25 of the plaintiff's affidavit states: "Although my headaches were severe, I could function on some levels during the onset and aftermath of a migraine, and sometimes even during one." Plaintiff's Aff. ¶ 25. The defendant challenges this paragraph based on the deposition testimony of Dr. Sullivan, the plaintiff's statement on "his short term disability paperwork" and the plaintiff's deposition testimony set forth above. Defendant's Responsive SMF ¶ 29. Dr. Sullivan is not an interested witness and the plaintiff's statements in an application for benefits are not sworn testimony, so neither provides a basis for exclusion of the affidavit statement under *Colantuoni*. None of the quoted testimony from the plaintiff's deposition contradicts this paragraph of his affidavit, and accordingly the paragraph may be considered by the court.

Paragraph 26 of the plaintiff's affidavit states: "Although during the onset and aftermath of a migraine, I often felt tired, weak, queasy, or was sensitive to bright light and loud noises, I was able to drive a vehicle, work out in the fitness center, and do some light shopping." The defendant contends that the plaintiff never experienced warning signs of a migraine, based on the deposition testimony set forth above, and that the plaintiff could not perform any activities when experiencing a migraine, citing other deposition testimony. Defendant's Responsive SMF ¶ 30;

Defendant's SMF ¶ 32. The deposition testimony quoted above does not contradict any of the assertions in this paragraph of the plaintiff's affidavit. The other cited portions of that deposition are the following:

Q. Did you ever experience a migraine while working out at the gym?

A. No.

    *     *     *     *     *     *

Q. So is it correct to state that when you were experiencing the—a migraine you couldn't—you couldn't perform any activities including driving?

A. Correct.

Plaintiff's Dep. at 88, 92. The first question and answer do not contradict the affidavit statement, because the plaintiff was asked whether he ever experience a migraine while working out at the gym, not whether he was able to work out during a migraine. The second question and answer, however, combined with the plaintiff's earlier-quoted deposition testimony, does contradict that portion of the statement that makes assertions about the "onset" of a migraine, and that portion of paragraph 26 of the affidavit and paragraph 30 of the plaintiff's statement of material facts will be stricken.

Paragraph 28 of the plaintiff's affidavit states: "Although I could function on minimal levels during the onset and aftermath, and sometimes even during a migraine, I was unable to work at Nichols Portland." Plaintiff's Aff. ¶ 28. The defendant challenges this statement on the basis of the deposition testimony cited above and the testimony of Dr. Sullivan. Defendant's Responsive SMF ¶ 32; Defendant's SMF ¶¶ 32, 38, 40. As previously noted, Dr. Sullivan's testimony does not provide a basis for exclusion of portions of an affidavit under *Colantuoni*, but the plaintiff's cited deposition testimony clearly contra-

572

dicts all of paragraph 28 other than that portion concerning the aftermath of a migraine. The contradictory portions of that paragraph of the affidavit and paragraph 32 of the plaintiff's statement of material facts will be stricken. In addition, the words "during any stage of a migraine" which appear at the end of paragraph 32 of the plaintiff's statement of material facts do not appear in paragraph 28 of the plaintiff's affidavit, the only authority cited in support of that paragraph of the statement of material facts, and will also be stricken.

Paragraph 72 of the plaintiff's affidavit states: "My headaches lessened and then resolved in March 2002." Plaintiff's Aff. ¶ 73. The defendant contends that this statement contradicts the plaintiff's deposition testimony. Defendant's Responsive SMF ¶ 99; Defendant's SMF ¶ 51. However, the defendant has not submitted evidence to support its assertion that the plaintiff testified at his deposition in a manner that contradicts his affidavit statement. The only page of the deposition cited, Plaintiff's Dep. at 134, contains no such testimony. The only contradiction in the other materials cited by the defendant appears in documents signed by the plaintiff's attorney. Plaintiff's Original Disclosure Statement (Exh. 13 to Plaintiff's Dep.) ("Disclosure") at [3]; State of Maine Workers' Compensation Board, Employee: BRIAN W. COLBURN Employer: PARKER HANNIFIN CORP [dated April 12, 2004] (Exh. A to Affidavit of Jan Stanley (Exh. E to Defendant's Responsive SMF)). Colantuoni does not address situations in which the contradictory statement is made only by the attorney for an interested witness, not by the witness himself. The analysis does not stop here, however, because counsel for the plaintiff admits that the defendant did testify at his deposition that the contents of "a certain deposition exhibit referencing his disability" were true "as far as he knew." Plaintiff's Response in Opposition to De-

fendant's Motion for Summary Judgment, etc. ("Opposition") (Docket No. 25) at 19. That "deposition exhibit" was the initial disclosure statement served by his attorney in this case. Plaintiff's Dep. at 134; Motion at 11–12. That document includes the following statement: "Plaintiff was terminated 1/31/02 and was unable to return to work due to his medical condition until 4/15/03." Disclosure at [3]. This representation by the plaintiff's attorney is, in the circumstances presented here, binding on the plaintiff. It clearly contradicts paragraph 72 of the plaintiff's affidavit. Accordingly, paragraph 72 of the plaintiff's affidavit and paragraph 99 of the plaintiff's statement of material facts and the first sentence of paragraph 51 of the plaintiff's responsive statement of material facts, both of which rely on that paragraph of the plaintiff's affidavit, are stricken.

Paragraph 73 of the plaintiff's affidavit states: "From January 31, 2002 (the date of my termination) until April 2003 when I found another job, I was able and available to work at my former job with Nichols Portland, with the exception of a few days in February and March 2002, when my headaches would have prevented that work." Plaintiff's Aff. ¶ 73. The defendant contends that this statement is contradicted by, inter alia, the deposition testimony discussed above in connection with paragraph 72 of the plaintiff's affidavit. Defendant's Responsive SMF ¶ 100. For the reasons already stated, I agree. Paragraph 73 of the plaintiff's affidavit and paragraph 100 of the plaintiff's statement of material facts and the second sentence of paragraph 51 of the plaintiff's responsive statement of material facts, both of which rely on that paragraph of the plaintiff's affidavit, are stricken.

**B. Relevant Undisputed Facts**

The defendant hired the plaintiff in 1998 as a utility worker. Defendant's SMF ¶ 2;

Plaintiff's Responsive SMF ¶ 2. When his employment ended, he held the position of machine operator one. *Id.* ¶ 3. On January 28 and 29, 2002 the plaintiff notified his supervisor by voice mail that he was unable to work due to a migraine headache. *Id.* ¶¶ 4–5. Between October 2001 and the end of his employment in January 2002 the plaintiff was absent from work twenty-five times. *Id.* ¶ 7. According to the plaintiff, he began missing work in October 2001 because he experienced severe debilitating headaches. *Id.* ¶ 12.

In January 2002 the defendant retained a private investigator to determine if the plaintiff's conduct was consistent with that of a person claiming to be incapacitated on those days he called in with a migraine. *Id.* ¶ 18. The defendant retained the private investigator because it had difficulty reaching the plaintiff by telephone at home and getting the plaintiff to submit the appropriate disability paperwork. *Id.* ¶ 19.[2] In January 2002 the plaintiff was scheduled to work the 2:30 p.m.—11:00 p.m. shift. *Id.* ¶ 21. On January 28 and 29, 2002 the private investigator observed and videotaped the plaintiff engaging in a number of activities at the same time that the plaintiff was supposed to be at work but had called in sick due to a migraine headache. *Id.* ¶ 22. On January 28, 2002 these activities began at 3:09 p.m. and included

visits to BKD Fitness Center, a video rental store, use of a pay phone, and visits to two variety stores, ending at 5:05 p.m. *Id.* ¶ 28. On January 29, 2002 these activities included a half hour visit to the same gym, renting videos at two video stores, stopping at a bank, making a call at a pay phone and making a purchase at a variety store, all over a three-hour period. *Id.* ¶ 33, 35.

The defendant terminated the plaintiff's employment on January 31, 2002 after concluding that the plaintiff had falsified the reason for his absence from work on January 28 and 29, 2002. *Id.* ¶ 36.[3] The plaintiff was unable to return to work due to his medical condition from the date of his termination on January 31, 2002 until April 15, 2003. Defendant's SMF ¶ 51.[4]

## III. Discussion

The plaintiff alleges that the defendant violated the federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, by interfering with his exercise of his rights under the FMLA and by retaliating against him for taking protected medical leave, Complaint (Docket No. 1) ¶¶ 11–15 (Count I) and that the defendant violated "Maine's Family and Medical Leave Requirements," *id.* ¶¶ 16–18 (Count II), an apparent reference to 26 M.R.S.A. § 843 *et seq.* The defendant contends that the

---

2. The plaintiff purports to deny this sentence, Plaintiff's Responsive SMF ¶ 19, but offers nothing of evidentiary quality to support its denial. The sentence, which is supported by the citation given by the defendant, is accordingly deemed admitted.

3. The plaintiff admits that the defendant terminated his employment on that date, but purports to deny that the defendant's reason for doing so was its conclusion that he had falsified the reason for his absence. Plaintiff's Responsive SMF ¶ 36. However, the only citation to the summary judgment record in support of that denial—paragraph 36 cites paragraph 4, which in turn cites paragraph

63 of the plaintiff's affidavit—merely states that the plaintiff believes that he "was terminated in retaliation for taking FMLA leave for my migraines." Plaintiff's Aff. ¶ 63. This conclusory statement of the plaintiff's belief is not evidence that can create a dispute about whether the defendant concluded that the plaintiff had falsified the reason for his absence.

4. This paragraph of the defendant's statement of material facts is deemed admitted because it is supported by the citations given to the summary judgment record and because the plaintiff's denial has been stricken, for the reasons discussed above.

same legal analysis governs both claims, Motion at 9 n. 6, and the plaintiff's opposition addresses only the federal-law claims, suggesting that he agrees. This court has indicated that it will proceed on this basis. *Brunelle v. Cytec Plastics, Inc.,* 225 F.Supp.2d 67, 76 n. 12 (D.Me.2002). My discussion of the federal claims accordingly applies to the state-law claims as well.

■ The FMLA "contains two distinct types of provisions." *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 159 (1st Cir.1998). "First, it creates a series of substantive rights"—including the right of an eligible employee to take up to twelve weeks a year of unpaid leave [5] when the employee has "a serious health condition that makes him unable to perform the functions of his or her position." *Id.* (citation and internal punctuation omitted). This set of rights is "essentially prescriptive, set[ting] substantive floors for conduct by employers, and creating entitlements for employees." *Id.* (citation and internal quotation marks omitted). "In such cases, the employer's subjective intent is not relevant." *Id.* "The issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Id.*

■ Second, "the FMLA provides protection in the event an employee is discriminated against for exercising [the above-described substantive] rights." *Id.* (footnote and citation omitted). With respect to this "proscriptive group of violations . . . the employer's motive is relevant, and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id.* at 160.

■ If the employee is unable to perform an essential function of the position which he held at the time he took FMLA leave because of a physical condition, including the continuation of a serious health condition, he has no right to restoration to another position under the FMLA upon expiration of the period of leave to which he is entitled. 29 C.F.R. § 825.214(b). That is the case here; the plaintiff was totally disabled by his migraines for a period of time in excess of 12 weeks [6] after January 28, 2002, using the most generous possible date for the beginning of his FMLA leave. Therefore, neither of his claims under the FMLA survives. *Wilcock v. National Distribs., Inc.,* 2001 WL 877547, at **3–4 (D.Me. Aug.2, 2001) (recommended decision). *See also Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 161 (2d Cir.1999); *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 784–85 (6th Cir.1998); *Barry v. Wing Mem'l Hosp.,* 142 F.Supp.2d 161, 165–66 (D.Mass.2001). The defendant is entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, I recommend that the defendant's motion for summary judgment be **GRANTED**.

---

**5.** The Maine statute provides for 10 consecutive work weeks of leave in any two years. 26 M.R.S.A. § 844(1).

**6.** For purposes of the state statute, this period also exceeds the 10 consecutive weeks provided.